**TOWNE CONSTRUCTION COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Secretary of Labor, Respondents.**

No. 87–3029.

United States Court of Appeals, Sixth Circuit.

April 6, 1988.

Roger L. Sabo, argued, Millisor & Nobil, Columbus, Ohio, for petitioner.

Ray Darling, Exc. Secretary, O.S.H.R.C., Gen. Counsel, Barbara Werthmann, argued, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for respondents.

Before ENGEL, Chief Judge,* and KENNEDY and KRUPANSKY, Circuit Judges.

PER CURIAM.

Towne Construction Company (Towne) petitions the Court to set aside an order of respondent Occupational Safety and Health Review Commission citing Towne for a serious violation of the Occupational Health and Safety Act. The Secretary of Labor, who seeks enforcement, is also a respondent. Towne claims that the citation is based on its failure to follow a regulation that was promulgated pursuant to an illegal delegation and is therefore void, that the regulation did not give Towne fair notice of the standard it was required to meet, and that any violation of the standard was due to an isolated employee occurrence. We find that the regulation was properly promulgated in accordance with the law, that the standard set was clear, and that there is substantial evidence in the record considered as a whole to support the Commission's decision that Towne violated the standard and that this violation was not

---

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

an isolated employee occurrence. The decision of the Commission is enforced.

Towne was cited for violation of the standard governing maximum loads to be lifted by a crane. The citation was the result of the collapse of a crane that killed a Towne employee. Towne was assessed a penalty of $240.00.

**The Delegation Issue:** Towne was cited for violation of 29 C.F.R. § 1926.550(a)(1), which requires compliance with the crane manufacturer's load limitations. Towne argues that this illegally delegates to private parties the duty to set standards. This section was promulgated as an Occupational Safety and Health Administration (OSHA) standard pursuant to the Occupational Health and Safety Act which directed the Secretary of Labor to adopt "any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees," 29 U.S.C. 655(a). Section 1926.-550(a)(1) must be read in context: section 1926.550(a)(17) requires that "[t]he employer shall comply with Power Crane and Shovel Association Mobile Hydraulic Crane Standard No. 2." As the Commission found, "[t]hat code is *very* detailed in describing how a crane load's limits are to be calculated," OSHRC Decision at 6, Jt.App. at 278 (emphasis in original). The crane manufacturer's load limitations, which Towne was found to have violated, "reflects *precisely* those load-testing duties that the OSHA standard imposes," *id.* at 8, Jt.App. at 280 (emphasis in original).

■ Towne argues that since the crane was manufactured before the OSHA standards were adopted, the manufacturer's limits must have been arrived at independently. There is no evidence of this; there is convincing circumstantial evidence that the manufacturer's limit calculations were made after the crane was built, since they include the new version of an industry standard that was changed after the crane

was built. In either case, the requirement that employers comply with manufacturer's load limits is not an unlawful delegation because the manufacturer's limits reflect the "national consensus standard" that Congress authorized the Secretary to adopt.

In addition, 29 C.F.R. § 1910.180(b)(2) requires that cranes such as the one involved in the accident must meet the standards of the American National Standard Safety Code for Crawler, Locomotive, and Truck Cranes, ANSI B30.5–1968.[1] Section 1910.-180(c)(1) describes the calculation of load limits in great detail, and section 1910.-180(c)(1)(iii) references a code of the Society of Automotive Engineers.

Towne objects that section 1910.180 sets standards for employers and not manufacturers, and the requirement of section 1926.550(a)(1), to comply with the manufacturer's load limits, remains an unlawful delegation.

In *Diebold, Inc. v. Marshall,* 585 F.2d 1327 (6th Cir.1978), this Court discussed the authority of the Secretary of Labor under 29 U.S.C. § 655(a) to adopt "national consensus standards" and "established Federal standards" in order to achieve a "nationwide minimum level of safety" with desired rapidity, *id.* at 1331. *Diebold* leaves no doubt that the Court thought the process lawful. The Court held that section 655(a) required adoption of these standards without substantive modification, *id.* at 1332. That is, the right of the Secretary to adopt standards created by private organizations was not questioned. *Diebold* strongly supports the conclusion we reach here.

It should also be noted that invalidation of the delegation would affect many other provisions of the Act, including, for example, the standard defining a hazardous chemical as one found to be a carcinogen by the International Agency for Research on Cancer, *see* 29 C.F.R. § 1910.1200(d)(4)(ii).

---

1. Cranes built before this standard went into effect were to be modified to conform to this standard "unless it can be shown that the crane cannot feasibly or economically be altered and that the crane substantially complies with the requirements of this section."

The physical impossibility of requiring OSHA independently to set safety standards for every industry job classification and industrial substance in the country adequately explains and justifies Congress' decision to allow the Secretary to adopt the fruits of private efforts as governmental standards. The particular standards involved here are substantively fair; nor do they benefit the groups that created the standards at the expense of the petitioner. We find no conflict of interest or anticompetitive aspect to this delegation. There is no constitutional violation.

**Fair Notice:** Towne also claims that it did not violate the manufacturer's load limit because "the manufacturer's load chart ... did not have weight limitation for this particular load," Petitioner's brief at 19. Petitioner objects because the load chart did not include values for lifting weights when the boom was extended at the particular angle (55 degrees) involved here.[2] Instead, the chart provides limits applicable at twelve different extensions, including 50 degrees and 63 degrees. Towne's argument is totally without merit. No one can dispute that the manufacturer intended that *some* weight limit apply to extension angles falling between those listed.

Construing Towne's argument liberally, it amounts to a due process argument that is sometimes intermingled and confused with its delegation argument. Basically, Towne claims that the standards gave it no guidance on what it could or could not do, because the method of interpolating the chart to apply to 55 degrees was not specified. Indeed, Towne argues that what the Commission now says is the preferred method, the "French curve," is so complicated that its employees could not be expected to apply it.

This claim is not supportable. Since it is self-evident that some weight limit must apply, and that the limit surely falls somewhere between the limits set for the closest listed angles, it is equally clear that some method of interpolation was required. The Commission found that even using a "straight line" method, Towne clearly exceeded the load limits set by the manufacturer for that angle. The real problem, as the factual findings of the Administrative Law Judge make clear, was that Towne's employees misestimated the weights involved, that the crane operator was unaware that the crane's capacity had been reduced due to a modification, and that the operator's attempt at straight line interpolation was based on an incorrect recollection of the manufacturer's load limit chart. The result was that the crane's capacity was exceeded by at least 25%.

Towne's argument can only be sustained if the manufacturer's load limits were so vague that it would be unfair to hold Towne responsible for its failure to comply. Since Towne knew or should have known that it was exceeding the manufacturer's limits according to any rational method of calculation, it is entirely fair to hold it responsible for this violation.

**The Violation and Towne's Affirmative Defense:** Towne claims that, even if there was a violation, it was the result of a single employee occurrence, which was unforeseeable and should not be charged to the employer. In this Circuit, "a claim of unforeseeable employee misconduct [is] an affirmative defense to be proved after the Secretary has made out a *prima facie* case of a violation of the Act," *Brock v. L.E. Myers Co., High Voltage Div.*, 818 F.2d 1270, 1276 (6th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987). There is substantial evidence that Towne employees were unaware that use of the crane required knowledge of its load limits; that there was no system by which necessary information would be conveyed to the crane operator, including the fact that the crane had been modified to reduce its capacity; and that a foreman misestimated the weight of part of the load.

To rebut this *prima facie* case, the employer must show that because it had "a thorough and adequate safety program

---

**2.** The question may also be looked at in reverse: Towne was cited for lifting a given weight at an extension of 55 degrees, when the manufactur- er's specifications required 71 degrees for that weight. Towne's argument remains the same under this view of the facts.

which is communicated and enforced as written, the conduct of its employee(s) in violating that policy was idiosyncratic and unforeseeable.... [T]he employer ... must demonstrate that program's effectiveness in practice as well as in theory," *id.* Towne did not meet this burden; indeed, the whole thrust of Towne's argument is that employees *did* follow Towne's normal procedures. These normal procedures resulted in a fatal accident. There is substantial evidence to support the Commission's finding that Towne failed to demonstrate, by a preponderance of the evidence, that its safety program, *in practice* was "thorough and adequate." The employer has the "responsibility to assure compliance by his own employees. Final responsibility for compliance with the requirements of this Act remains with the employers." S.Rep. 1282, 91st Cong., 2d Sess. 10–11, *reprinted in* 1970 U.S.Code Cong. & Admin.News 5177, 5182.

The petition is denied, and the Commission's order is enforced.