[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2010
JOHN LEY
ACTING CLERK

_____

No. 08-13549
Non-Argument Calendar

_____

D. C. Docket No. 08-21274-CV-UU

ASSOCIATED BUILDERS AND CONTRACTORS
FLORIDA EAST COAST CHAPTER,
as an Organization and Representative
of its Members,
SOUTH FLORIDA ASSOCIATED GENERAL
CONTRACTORS OF AMERICA, INC.,
as an Organization and Representative
of its Members,
FLORIDA CRANE OWNERS COUNCIL INC.,
as an Organization and Representative
of its Members,
CONSTRUCTION ASSOCIATION OF SOUTH
FLORIDA,
as an Organization and Representative
of its Members,

Plaintiffs-Appellees,

versus

MIAMI-DADE COUNTY, FL,
a political subdivision of
the State of Florida,

Defendant-Appellant.

_____

No. 09-10678
Non-Argument Calendar
_____

D. C. Docket No. 08-21274-CV-UU

ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA
EAST COAST CHAPTER,
as an Organization and Representative
of its Members,
SOUTH FLORIDA ASSOCIATED GENERAL CONTRACTORS OF
AMERICA,
as an Organization and Representative
of its Members,
FLORIDA CRANE OWNERS COUNCIL INC.,
as an Organization and Representative
of its Members,
CONSTRUCTION ASSOCIATION OF SOUTH FLORIDA,
as an Organization and Representative
of its Members,

Plaintiffs-Appellees,

versus

MIAMI-DADE COUNTY,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 26, 2010)

2

Before EDMONDSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Miami-Dade County ("County") appeals (1) the district court's grant of a preliminary injunction prohibiting the enforcement of part of Miami-Dade County Ordinance Number 08-34 ("Ordinance") and (2) the district court's subsequent grant of summary judgment and a permanent injunction against the enforcement of the same section of the Ordinance. In both instances, the district court held that the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. §§ 651-78, preempted a section of the Ordinance mandating wind load standards for tower cranes and hoists.[1] Considering these appeals together, we affirm the district court's order of summary judgment and grant of a permanent injunction and dismiss the appeal of the preliminary injunction as moot.

## I. Background

On March 18, 2008, Miami-Dade County passed and adopted the Ordinance, which set binding regulations for the construction, installation, operation, and use of tower cranes, personnel, and material hoists.

Soon thereafter, several building and contracting groups ("plaintiff-appellees") sought declaratory and injunctive relief to prohibit enforcement of the

---

[1] In both cases, the County limits its appeal to whether the Ordinance's wind load standard is preempted by the OSH Act.

Ordinance. In part, plaintiff-appellees argued that the Ordinance violated the OSH Act because it was a non-approved state regulation of occupational safety and health issues governed by federal standards. The OSH Act's regulations seek to ensure occupational safety by requiring compliance with either the manufacturer's specifications for erection, maintenance, and operation of cranes and hoists[2] or, if those are unavailable, compliance with the determinations of a qualified engineer competent in the field. 29 C.F.R. § 1926.550(a)(1). If a state desires to override these federal occupational safety standards, the state must submit a plan for federal approval. 29 U.S.C. § 667.

After a hearing, the district court temporarily enjoined the enforcement of certain provisions of the Ordinance, concluding that they were preempted by the OSH Act. In relevant part, the district court held the Ordinance's hurricane wind load standard of 140 miles per hour for tower cranes was a non-approved occupational safety regulation preempted by the OSH Act's regulations. The County timely appealed this preliminary injunction.

Before we could address that appeal, plaintiff-appellees filed a motion for summary judgment asking the court to permanently enjoin the enforcement of the

[2] The vast majority of manufacturer's specifications in the United States reflect a national consensus and require the crane to comply with the European Standard for wind loads of 93 miles per hour.

4

Ordinance that the district court held was preempted in the preliminary injunction. The district court granted the motion for summary judgment motion and permanently enjoined the County from implementing the wind load standards. The County appealed. We review these appeals together.

## II. Discussion

Once an order of permanent injunction is entered, any preliminary injunction merges with it, and appeal may be had only from the order of permanent injunction. *Sec. & Exch. Comm'n v. 1st Fin. Group of Tex.*, 645 F.2d 429, 433 (5th Cir. 1981).[3] In this case, the district court's order of summary judgment granted a permanent injunction, thus merging the preliminary injunction into the permanent injunction and mooting the appeal of the preliminary injunction. Thus, the only issues properly before us are the district court's grant of summary judgment and the permanent injunction. We review the district court's grant of summary judgment *de novo*. *Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1321 (11th Cir. 2004).

In *Gade v. National Solid Wastes Management Ass'n*, the Supreme Court reasoned that Congress intended to establish "uniform, federal occupational and health standards" in the OSH Act to avoid "duplicative, and possibly

---

[3] Fifth Circuit decisions rendered prior to October 1, 1981 are binding precedent on this court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

5

counterproductive, regulation." 505 U.S. 88, 102 (1992). The Court concluded that "the OSH Act precludes any state regulation of an *occupational safety or health issue* with respect to which a *federal standard* has been established, unless a state plan has been submitted." Id. (emphasis added). Because it is undisputed that the Ordinance had not been submitted as a state plan, we must determine (1) whether the Ordinance's wind load standard is an "occupational safety or health issue" and, if so, (2) whether it is preempted because the OSH Act's regulations establish a superseding "federal standard."

The County first argues that the Ordinance's wind load standards are not preempted because these standards do not regulate an "occupational safety or health issue." As the County explains it, because "falling cranes kill people, workers and non workers alike," the standards are directed toward *public* safety during hurricanes and not occupational safety. In other words, the County's position is that the Ordinance has a singular purpose: to protect public safety and not workers.

This argument is not persuasive. Construction job sites are closed to the public and it is undisputed that the Ordinance's wind load standards regulate how *workers* use and erect tower cranes during the course of their employment, thus directly affecting occupational safety. Furthermore, the County failed to identify a

6

single incident in which a crane accident injured a member of the general public during a hurricane. To the extent that the Ordinance does provide a benefit to the general public, the regulation is a dual purpose law. A state law is still an occupational standard even if it serves the dual purposes of protecting both public and occupational safety: "That such a law may also have a nonoccupational impact does not render it any less of an occupational standard for the purposes of pre-emption analysis." *Gade*, 505 U.S. at 107. We therefore conclude that the wind load standards in the Ordinance are "occupational safety or health" regulations.

The County next argues that the OSH Act does not set a "federal standard" for wind load in its regulations and therefore cannot preempt the Ordinance. The Code of Federal Regulations defines a "standard" as "the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary to provide safe or healthful employment and places of employment." 19 C.F.R. § 1911.2(c). Under this definition, a plain reading of 29 C.F.R. § 1926.550 reveals that the OSH Act's regulations create a federal "standard": Employers operating cranes or hoists on a job site *must* comply with either the manufacturer's specifications (the vast majority reflect a national consensus and are identical) or the limitations set forth by a competent expert in the field. As the former Deputy Assistant Secretary of Labor testified at the preliminary injunction hearing, the

OSH Act "exists at this moment and binds the employer to operate all his cranes on a construction site in accordance with the specifications of the manufacturer." It is immaterial that the OSH Act's regulations do not set a uniform wind load standard; every job site with a crane or hoist has a federally mandated safety standard. Thus, we conclude that the OSH Act's regulations set a federal standard for wind load standards.

Finally, the County argues that the OSH Act unconstitutionally delegates legislative power to set federal occupational safety standards to manufacturers by failing to provide an "intelligible principle" to govern the use of this delegated legislative power. *See J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394 (1928).

This argument is also unavailing. The OSH Act provides an intelligible principle, directing the Secretary of Labor to adopt standards that are in accordance with the "national consensus standard." 29 U.S.C. § 655(a). In this case, the majority of crane manufacturers have reached a consensus by adopting the European Standard, requiring cranes to accommodate a wind load of 93 miles per hour. By adopting these consensus specifications, the OSH Act's wind load regulations, therefore, conform with an intelligible principle and are constitutionally valid. Faced with the same constitutional challenge, the Sixth

Circuit reached the same conclusion: "[T]he requirement that employers comply with manufacturer's load limits is not an unlawful delegation because the manufacturer's limits reflect the 'national consensus standard' that Congress authorized the Secretary to adopt." *Towne Constr. Co. v. Occupational Safety & Health Review Comm'n*, 847 F.2d 1187, 1189 (6th Cir. 1988). The Sixth Circuit further reasoned that "the physical impossibility of requiring OSHA independently to set safety standards for every industry job classification and industrial substance in the country adequately explains and justifies Congress's decision to allow the Secretary to adopt the fruits of private efforts as governmental standards." *Id*. at 1190. The Third Circuit used similar reasoning in concluding that the Occupational Safety and Health Administration could rely on information from chemical manufacturers in setting standards. *Associated Builders & Contractors, Inc. v. Brock*, 862 F. 2d 63, 68-69 (3d Cir. 1988). We therefore refuse to invalidate the OSH Act's wind load standards.

## III. Conclusion

Because the Ordinance contains non-approved occupational safety or health regulations conflicting with a federal standard, the Ordinance is preempted. Therefore, the district court's grant of summary judgment and the issuance of a permanent injunction are

**AFFIRMED**.