[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14227

_____

D.C. Docket No. 1:19-cv-01634-WMR-RDC

GEORGIA ADVOCACY OFFICE,
M.J.,
K.H.,
on behalf of themselves and others similarly situated,

Plaintiffs – Appellees,

versus

THEODORE JACKSON,
in his official capacity as Sheriff of Fulton County,
MARK ADGER,
in his official capacity as Chief Jailer,
MEREDIETH LIGHTBOURNE,
in her official capacity as Medical Director,
TYNA TAYLOR,
in her official capacity as Detention Captain,
PEARLIE YOUNG,
in her official capacity as Detention Lieutenant,

Defendants – Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 14, 2021)

Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The District Court below entered a preliminary injunction requiring Fulton County Jail officials to provide regular out-of-cell time to female inmates with psychiatric disabilities and to improve the sanitary conditions in their cells. The officials appealed. We consider whether the preliminary injunction expired by operation of law under the terms of the Prison Litigation Reform Act ("PLRA"). We hold that it has, and accordingly dismiss this appeal as moot and vacate the preliminary injunction order.

I.

The Plaintiffs in this action are the Georgia Advocacy Office, a nonprofit dedicated to serving disabled Georgia residents, and two psychiatrically disabled female inmates of the Fulton County Jail ("the Jail"). On April 10, 2019, Plaintiffs filed a class action for injunctive relief in the United States District Court for the Northern District of Georgia on behalf of "all women with psychiatric disabilities

2

who are now or will in the future be confined in the Fulton County Jail system."[1] The Defendants named in the complaint were Theodore Jackson, Sherriff of Fulton County; Mark Adger, Chief Jailer for the Sherriff's Office; Meredieth Lightbourne, Medical Director for the Sherriff's Office; Tyna Taylor, Detention Captain for the South Fulton Municipal Regional Jail; and Pearlie Young, Detention Lieutenant for the South Fulton Municipal Regional Jail.

Plaintiffs alleged the conditions at the Jail violate the Eighth Amendment's ban on "cruel and unusual punishments" and the Fourteenth Amendment's equal protection clause. They also alleged violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Plaintiffs based their claims mainly on the Jail's alleged practice of confining psychiatrically disabled female inmates to isolation cells (called "mental health pods") for months at a time as well as the unsanitary conditions in those cells. Their equal protection claim arose from the Jail's alleged policy of barring female inmates from receiving jail-based competency restoration services.[2]

---

[1] Plaintiffs also seek relief on behalf of a subclass including "all women with psychiatric disabilities who are now or will in the future be deemed incompetent to stand trial while confined in the Fulton County Jail system."

[2] Competency restoration services are designed to restore criminal defendants to competency after a court has found them incompetent to stand trial.

On April 7, 2019, Plaintiffs moved the District Court to enter a preliminary injunction requiring Defendants to "(1) Offer at least four hours of daily out-of-cell time to all women in [mental health pods], including one hour per day of outdoor time; and (2) Within 30 days, establish and present to the Court for its approval a plan, designed to be implemented within another 30 days, for providing a medically appropriate environment for women who experience psychiatric disabilities and are assigned to [mental health pods], including sanitary conditions of confinement and out-of-cell therapeutic activities."  Plaintiffs also requested "expedited discovery and a hearing at which Plaintiffs will show that the requested relief satisfies the requirements of the [PLRA]."[3]

On July 23, 2019, after a three-day evidentiary hearing, the District Court granted Plaintiffs' requested preliminary injunction.[4]  The order contained the

---

[3] As will be discussed in part II.A, *infra*, the PLRA imposes requirements for injunctive relief respecting prison conditions in addition to the traditional requirements in equity.

[4] The order required Defendants to take the following actions:

1. Within 7 days of the entry of this Order, develop a system to track each individual's out of cell time within B, C and G pod and that each woman be permitted at least 1 hour recreation time and 2 hours of free time daily.

2. Within 30 days of the entry of this Order, offer at least four hours of daily out-of-cell time to each woman assigned to B-Pod, C-Pod, and G-Pod on at least five days each week.  At least one hour per day shall include outdoor recreation or indoor gym time.

3. Within 30 days of the entry of this Order, establish and file with the Court a written plan, designed to be implemented within another 30 days, for providing sanitary conditions of confinement and out-of-cell therapeutic activities to each woman assigned to B-Pod, C-Pod, or G-Pod on at least five days each week.  The plan must specifically address (a) steps to assist women in maintaining their hygiene; (b) steps to achieve a clean and safe living space in each pod; (c) structured

findings traditionally required for the issuance of a preliminary injunction—

likelihood of success on the merits, that the balance of hardships favored Plaintiffs,

irreparable harm, and public interest.  The Court also recognized that the PLRA

required additional "particularized findings," and indicated that it would make

those findings in a "forthcoming opinion."

---

out-of-cell group activities; (d) designation and training of officers assigned to work in a non-acute housing unit; and (e) addressing and maintaining the physical plant of the jail.  Defendants shall confer in good faith with Plaintiffs' counsel to create terms of the new plan.  If the parties are unable to agree on the content of the plan, Plaintiffs may submit written objections to the Defendants' plan within 14 days of the date on which Defendants file it.

4. Nothing in this Order shall prevent Defendants from denying out-of-cell time to a woman assigned to B-Pod, C-Pod, or G-Pod where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person.  If out-of-cell time is denied for any individual detainee in accordance with this paragraph, the reasons for the denial shall be fully documented, to include the name of the detainee, date of out-of-cell time denial, and the specific reason for the denial.  No detainee may be denied out-of-cell time under this paragraph for a period greater than 24 hours.

5. Failure to comply with this Order shall not be excused by allegations of inadequate staffing.

The District Court's subsequent addendum order struck the last sentence of the fourth paragraph and replaced it with:

A detainee denied out-of-cell time under this paragraph shall be reviewed by a correctional supervisor at the rank of lieutenant or higher at least once every 24 hours to determine whether denial of the detainee's out-of-cell time remains necessary to prevent an immediate and substantial risk of serious harm to a person. In any such case, the mental health treatment team shall be notified and a member of the mental health staff shall visit the detainee at least once per every 24-hour period.  A psychiatrist must approve a denial of out-of-cell time for a person with serious mental illness if that denial continues for more than 48 consecutive hours.

5

That opinion—styled "addendum order"—was issued 62 days later on September 23, 2019.  The opinion explained the Court's earlier findings in greater detail and made additional findings that the PLRA's requirements were satisfied.

On October 18, 2019, Defendants took this interlocutory appeal from the District Court's two orders pursuant to 28 U.S.C. § 1292(a).[5]  Defendants argue the District Court abused its discretion in granting Plaintiffs' request for a preliminary injunction because neither the traditional requirements for a preliminary injunction nor the PLRA's additional need-narrowness-intrusiveness requirements were satisfied.

After the benefit of oral argument, we find that the preliminary injunction has expired by operation of law, making this appeal moot.  We accordingly dismiss the appeal and vacate the order imposing the injunction as well as the subsequent addendum order.

---

[5] On August 20, 2019, Defendants filed a motion for reconsideration of the District Court's July 23 order under Federal Rule of Civil Procedure 59(e).  The Court's September 23 addendum order disposed of the motion, and Defendants therefore had 30 days from the date of the addendum order to appeal.  *See* Fed. R. App. Pro. 4(a)(4)(A); *Green v. Drug Enf't Admin.*, 606 F.3d 1296, 1299–1301 (11th Cir. 2010); *United States v. Ibarra*, 502 U.S. 1, 6–7, 112 S. Ct. 4, 6–7 (1991).

II.

Congress enacted the Prison Litigation Reform Act of 1995, 18 U.S.C. §
3626, to expedite prison litigation and end judicial overreach into the management
of prisons.  Put simply, "Congress meant to get the federal courts out of the
business of running jails." *Benjamin v. Jacobson*, 172 F.3d 144, 182 (2d Cir.
1999) (en banc) (Calabresi, J., concurring).

To that end, § 3626(a)(1) strictly limits the circumstances in which district
courts can issue "prospective relief"[6] in civil actions challenging prison conditions:

> Prospective relief in any civil action with respect to prison conditions
> shall extend no further than necessary to correct the violation of the
> Federal right of a particular plaintiff or plaintiffs.  The court shall not
> grant or approve any prospective relief unless the court finds that such
> relief is narrowly drawn, extends no further than necessary to correct
> the violation of the Federal right, and is the least intrusive means
> necessary to correct the violation of the Federal right.  The court shall
> give substantial weight to any adverse impact on public safety or the
> operation of a criminal justice system caused by the relief.

§ 3626(a)(1)(A).  These requirements are commonly referred to as the "need-
narrowness-intrusiveness" requirements.  *See United States v. Sec'y, Fla. Dep't of*

---

[6] "Prospective relief" as used in the PLRA is defined as "all relief other than
compensatory monetary damages."  18 U.S.C. § 3626(g)(7).  "Relief" is further defined as "all
relief in any form that may be granted or approved by the court, and includes consent decrees but
does not include private settlement agreements."  § 3626(g)(9).  "Private settlement agreement"
is defined as "an agreement entered into among the parties that is not subject to judicial
enforcement other than the reinstatement of the civil proceeding that the agreement settled."
§ 3626(g)(6).

*Corr.*, 778 F.3d 1223, 1226 (11th Cir. 2015).  Section 3262(a)(1) also sets out

"principles of comity" that further limit the issuance of prospective relief:

> (B) The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless—
>
> (i) Federal law requires such relief to be ordered in violation of State or local law;
>
> (ii) the relief is necessary to correct the violation of a Federal right; and
>
> (iii) no other relief will correct the violation of the Federal right.

§ 3626(a)(1)(B).

Recognizing that district courts might enter preliminary injunctive relief in

prison cases under Federal Rule of Civil Procedure 65(a), Congress set out

additional requirements for such relief in § 3626(a)(2):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.  Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

In sum, § 3626(a)(2) does three things.  First, it confirms that courts can

issue preliminary injunctions in prison cases "to the extent otherwise authorized by

8

law."  Second, it provides that preliminary injunctive relief must meet the need-narrowness-intrusiveness requirements.  Third, it provides that preliminary injunctive relief shall expire within 90 days unless the court does two things: (1) makes the need-narrowness-intrusiveness findings for prospective relief under § 3626(a)(1), and (2) makes the order final.

This appeal primarily concerns the third function—we will call it the "unless" clause—and particularly the meaning of the phrase "makes the order final."  Since the District Court here entered the challenged preliminary injunction well over 90 days ago, we must decide whether it did what was necessary to prevent its expiration by operation of law on the 90th day.  If it did not, then this appeal is moot and we lack jurisdiction absent an applicable exception.  *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1229.

Plaintiffs argue the preliminary injunction has not expired.  According to them, all the "unless" clause requires district courts to do to avoid expiration is to "finalize a preliminary injunction's terms to ensure that they comply with . . . [the] need-narrowness-intrusiveness criteria."  Under this reading of the statute, the District Court did all it needed to do to prevent expiration when it issued its addendum order making the required need-narrowness-intrusiveness findings.

Defendants, by contrast, insist that making the order "final" means converting the preliminary injunction into a permanent injunction.  The District

Court did not treat the preliminary-injunction hearing as a trial on the merits under Federal Rule of Civil Procedure 65(a)(2)[7] and therefore could not have entered a permanent injunction.  Thus, if Defendants' interpretation is correct, the preliminary injunction dissolved by operation of law long ago.

We note that the parties' positions are somewhat unusual.  One would usually expect the appellees to be the ones arguing the Court lacks jurisdiction to decide the appeal, but here it is the appellants (Defendants) who press the argument and appellees (Plaintiffs) who resist it.  Defendants' position is not as senseless as it appears at first blush, however, because while they believe their appeal is moot, they urge us to decide it anyway under the exception to the mootness doctrine for disputes "capable of repetition, yet evading review."  We will grant Defendants half of what they seek since we believe the injunction against them has expired by operation of law, making this appeal moot, but we decline to go further and review its conformance with the PLRA because we do not believe this dispute is one that will evade review.

---

[7] Rule 65(a)(2) provides:

Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing.  Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial.  But the court must preserve any party's right to a jury trial.

In part II.A, we discuss the way the PLRA alters the traditional landscape for entering injunctive relief in PLRA cases.  In part II.B, we confront the parties' competing arguments about the meaning of the PLRA's "unless" clause and ultimately reject Plaintiffs' interpretation.  Finally, in part II.C we address and reject Defendants' argument that this dispute is "capable of repetition, yet evading review."

A.

Before diving into the PLRA's text, we take a step back and examine how it changes the landscape for issuing injunctive relief in prison cases.

We begin with what the PLRA leaves unchanged.  Section 3626(a)(1)(C) states: "Nothing in this section shall be construed . . . to repeal or detract from otherwise applicable limitations on the remedial powers of the courts."  Congress thus made clear that the limitations on injunctive relief imposed by the Federal Rules of Civil Procedure and traditional equity practice remain in force in cases governed by the PLRA.  The PLRA only adds to the preexisting limits on injunctive relief; it does not subtract from them.

The procedural dimension of those preexisting limits come from the Federal Rules.  Upon application for injunctive relief, Rule 52 requires a district court to hear the evidence in support of and opposition to the injunction and, whether the court grants or denies the application, issue an order stating its findings of fact and

conclusions of law.[8] *See* Fed. R. Civ. P. 52(a)(1)&(2).  If the court grants the injunction, it must state the reasons why it issued, state the terms of the injunction specifically, and describe in "reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  If the court issues a preliminary injunction, it must also give notice to the enjoined party.  Fed. R. Civ. P. 65(a)(1).

The substantive considerations informing a district court's decision whether to issue injunctive relief come from "historic federal equity practice."  11A Charles A. Wright & Arthur Miller, Federal Practice and Procedure §§ 2947, 2942 (3d ed. 2020).  For the entry of preliminary injunctive relief, the four traditional considerations in equity are: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the harm an injunction may cause to the defendant; and (4) a grant of preliminary injunction would not disserve the public interest.  *Nnadi v. Richter*, 976 F.2d 682, 690 (11th Cir. 1992).  The considerations at play for permanent injunctions overlap with the preliminary-injunction considerations, though they are not identical.  Courts considering whether to grant a permanent injunction ask whether the

---

[8] The Supreme Court has said that it is preferable for district courts to make these findings at or before they issue the preliminary injunction.  *Gibbs v. Buck*, 307 U.S. 66, 78, 59 S. Ct. 725, 732 (1939).  However, seeing as it would be pointless to reverse a district court's decision to grant a preliminary injunction on the basis that it made sufficient findings later than it ought to have, the Court has essentially called this harmless error.  *Id.*

plaintiff has demonstrated: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006)). The PLRA does not displace these equitable considerations in cases that fall within its ambit. *See Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) (applying the traditional equitable considerations on review of a preliminary injunction subject to the PLRA).

Once a district court determines that injunctive relief is warranted under the traditional equitable considerations, it must consider the appropriate scope of such relief. This step in issuing an injunction involves the "measurement or shaping" of the injunction and is sometimes referred to as the "tailoring stage." Dan B. Dobbs, *Law of Remedies* § 2.4(6), at 113–14 (2d ed. 1993). The fundamental principle of equity guiding the court at this stage is that "injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." *Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013) (quoting *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003)) (alterations adopted); *see also* Dobbs, *supra*

13

§ 1.7, at 30 ("The general principle states that remedies should reflect rights and should not give the plaintiff either more or less than her right or entitlement.").  In the case of a constitutional violation, "injunctive relief must be tailored to fit the nature and extent of the established violation."  *Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984).  In other words, the injunction "must be no broader than necessary to remedy the constitutional violation."  *Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982).  When a district court fails to follow this principle and drafts an unnecessarily broad injunction, the district court abuses its discretion.  *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1205 (11th Cir. 2009).

Having established the background principles that guide courts in issuing and tailoring injunctions, we now examine how the PLRA alters the landscape for injunctions in prison cases.  It does so in two significant ways.  First, the PLRA supercharges some of the traditional equitable principles of injunctive relief.  While courts were already required to ensure injunctions are no broader than necessary, the PLRA emphasizes the importance of narrow tailoring in prison litigation by requiring courts to make specific findings that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  § 3626(a)(1)(A).  The PLRA also supercharges and particularizes

the traditional public interest consideration by providing that courts "shall give *substantial weight* to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." § 3626(a)(1)(A) (emphasis added). This requirement applies to the issuance of permanent as well as preliminary injunctive relief, § 3626(a)(2), and presumably applies both to the determination of whether the plaintiff is entitled to an injunction and to the tailoring of the injunction.

Second, § 3626(a)(2)'s "unless" clause changes the function of preliminary injunctions in prison cases. Ordinarily, the purpose of a preliminary injunction is to prevent the plaintiff from suffering irreparable injury before the court can reach a final decision on the merits. Wright & Miller, *supra* § 2947. To serve this purpose, preliminary injunctions are typically "effective until a decision has been reached at a trial on the merits." *Id.* § 2941. A preliminary injunction under the PLRA, however, may or may not last until a final decision on the merits is made. Its lifespan is instead predetermined by the "unless" clause—it will automatically expire 90 days after its entry unless certain conditions are met, one of which, as we will explain in part II.B, is the entry of a permanent injunction after a trial on the merits. § 3626(a)(2). In this respect, preliminary injunctive relief under the PLRA more closely resembles a temporary restraining order ("TRO") than a traditional preliminary injunction. TROs are meant to preserve the status quo until a

15

preliminary-injunction hearing is held, but their 14-day lifespan means they will not necessarily last long enough to fulfill this function. *See* Fed. R. Civ. P. 65(b)(2); Wright & Miller, *supra* § 2951. The limited duration of a TRO is "designed to restrict the possible adverse effect of an order that is granted without a hearing and to ensure a prompt hearing on the application for a preliminary injunction." Wright & Miller, *supra* § 2953. Similarly, the PLRA's 90-day cap on preliminary injunctions limits the harmful effects of potentially unjustified or overbroad injunctions and expedites the lifecycle of prison cases. The PLRA thus subordinates the traditional function of preliminary injunctive relief—the prevention of injury pending a trial on the merits—to the PLRA's overarching goal of reducing judicial involvement in prison management.

But how does this reshuffling of values play out in practical terms? Basically, the PLRA's imperative that prospective relief shall be awarded only to the extent "necessary to correct the violation of [a] Federal right," § 3626(a)(1)(A), functions in conjunction with the "unless" clause, § 3626(a)(2), to create what is in effect a 90-day test period during which the necessity of permanent injunctive relief can be evaluated.

To see what we mean, consider the possible outcomes after a district court issues a 90-day preliminary injunction. One possibility is that the defendant reforms its practices to comply with the terms of the injunction within the 90 days.

16

In this situation, a district court should ask whether the defendant's reforms "have completely and irrevocably eradicated the effects of the alleged violations," *Thomas v. Bryant*, 614 F.3d 1288, 1321 (11th Cir. 2010), keeping in mind that "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when . . . there is probability of resumption," *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690, 696 (1952). If the district court is satisfied that the defendant's reforms are in earnest and sufficiently enduring, it should ordinarily let the preliminary injunction expire on the 90th day and dismiss the case, since a permanent injunction would no longer be "necessary to correct the violation of the Federal right." § 3626(a)(1)(A); *see Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530–31 (11th Cir. 2013) (recognizing that a defendant's voluntary cessation of challenged conduct can sometimes moot a suit for injunctive relief). If, on the other hand, the defendant fails to implement reforms or implements half-baked or impermanent reforms, the district court should proceed to a trial on the merits, determine whether a permanent injunction can be issued consistent with § 3626(a)(1)'s requirements, and if so, make the findings required by that section and enter a permanent injunction as part of a final judgment—or in the words of the PLRA, "make[] the order final." § 3626(a)(2). If the defendant wants to challenge the

17

permanent injunction on appeal, he can appeal it as a final judgment under 28 U.S.C. § 1291.[9]

But what if the defendant wants to appeal the grant of preliminary injunctive relief?  It can appeal the preliminary injunction order under 28 U.S.C. § 1292(a)(1) within 30 days of its entry, Fed. R. App. P. 4(a)(1)(A), and the court of appeals will have 90 days from the order date to decide the appeal.  If the court of appeals does not decide the appeal within that time, then the injunction's automatic expiration will oust the court of jurisdiction, mooting the appeal.  *See United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1229.  The district court should then ordinarily proceed to a trial on the merits, taking the fact of the defendant's appeal as some evidence that any reform efforts it may have made are unlikely to render permanent injunctive relief unnecessary.  *See Rich*, 716 F.3d at 530–31 (refusing to find that defendant's reforms mooted the appeal in part because the defendant "continue[s] to press on appeal that the voluntarily ceased conduct should be declared constitutional").

---

[9] Section 1291 provides:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

These alterations to the landscape of injunctive relief in prison cases further the PLRA's twin aims of expediting prison litigation and ending judicial micromanagement of prison systems. Once a preliminary injunction issues, the plaintiff's entitlement to a permanent injunction is typically ascertained within 90 days, greatly condensing the litigation lifecycle. Furthermore, the model avoids unnecessary judicial oversight by incentivizing prisons to redress violations on their own. A prison that wishes to avoid being subject to a permanent injunction and the attendant judicial oversight will have good reason to reform its policies during the 90-day period in which the preliminary injunction is in place.

### B.

It should be clear from the foregoing discussion that we believe the entry of a permanent injunction is necessary to prevent a preliminary injunction from expiring by operation of law after 90 days under the PLRA's "unless" clause. This, we believe, follows from the PLRA's model for injunctive relief. Plaintiffs argue, though, that the PLRA's text is to the contrary. We disagree.

We begin questions of statutory interpretation by looking at the statute's plain language. *United States v. Gilbert*, 198 F.3d 1293, 1298 (11th Cir. 1999). In doing so, we follow "the cardinal rule that statutory language must be read in context since a phrase gathers meaning from the words around it." *Hibbs v. Winn*,

542 U.S. 88, 101, 124 S. Ct. 2276, 2285 (2004) (quotation marks and citation omitted) (alterations adopted).  Recall that the "unless" clause provides:

> Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

§ 3626(a)(2).  The question before us is: What does it mean to make the order "final"?

A "final order" is a commonplace legal term meaning "[a]n order that is dispositive of the entire case." *Final Order*, Black's Law Dictionary 1123 (7th ed. 1999); *see also Fort v. Roadway Express, Inc.*, 746 F.2d 744, 747 (11th Cir. 1984) ("A final judgment is generally recognized as being an order of the court which 'leaves nothing for the court to do but execute on the judgment.'" (citation omitted)).  An order is not "final" in this sense unless it "end[s] a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's finding but not precluding an appeal." *Final*, Webster's Third New International Dictionary 851 (1993).  Final orders stand in direct contrast to interlocutory orders, which are "order[s] that relate[] to some intermediate matter in the case." *Interlocutory Order*, Black's Law Dictionary 1123.

A suit for a permanent injunction contemplates a bench trial on the merits followed by findings of fact and conclusions of law under Federal Rule of Civil

Procedure 52(a)(1) and the entry of a final judgment granting or denying the requested relief. *See Permanent Injunction*, Black's Law Dictionary 788 (defining "permanent injunction" as "[a]n injunction granted after a final hearing on the merits"). The focus on a motion for a preliminary injunction, by contrast, is whether the plaintiff faces a danger of irreparable injury before a permanent injunction can be issued and whether the plaintiff is likely to prevail on the merits. *See Preliminary Injunction*, Black's Law Dictionary 788; *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981). If a district court decides to issue a preliminary injunction, it does so by making the findings of fact and conclusions of law required by Rule 52(a)(2) and entering an interlocutory order.[10] *See Camenisch*, 451 U.S. at 395–96, 101 S. Ct. at 1834.

If the "unless" clause, when it speaks of making the order "final," means entering a "final order" as Defendants argue it does, then § 3626(a)(2) imposes a 90-day limit on all preliminary injunctions. If an injunction exceeding 90 days is

---

[10] The findings of fact and conclusions of law that a district court must make for a preliminary injunction differ from those required for a permanent injunction because, as we previously discussed in part II.A, *supra*, the equitable considerations for each are not identical. When the court makes the findings and conclusions to enter a preliminary injunction, they will be framed in prospective terms—*likelihood* of success on the merits and a threat that the plaintiff *will* suffer irreparable injury. *Nnadi v. Richter*, 976 F.2d 682, 690 (11th Cir. 1992). But when the District Court enters a permanent injunction, he must find *actual* success on the merits and an *actual* irreparable injury. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

sought, it could only be ordered as part of a final judgment that leaves nothing further for the court to do.

Plaintiffs, however, argue that the "unless" clause uses "final" in a less technical sense. According to Plaintiffs, "final" means only "not to be processed further but . . . utilized as is." *Final*, Webster's Third New International Dictionary at 8551. To "make the order final" in this sense means simply to complete or perfect the order by making all the required findings for the entry of preliminary injunctive relief.

Plaintiffs' interpretation has some merit. If Congress wanted to make preliminary injunctions expire after 90 days unless the district court entered a final order imposing a permanent injunction, it could have said so more clearly. "Making" a preliminary injunction order final is a strange way to speak of entering a final judgment incorporating an injunction. Nonetheless, we believe Defendants have the better interpretation.

Despite the linguistic awkwardness just noted, the word "final" amidst talk of "preliminary injunctive relief" and "orders" naturally evokes, to a legally trained mind, the concept of a "final order." The surrounding language strongly suggests that "final" is being used in a technical legal sense as opposed to the broader colloquial sense that Plaintiffs advance. *See United States v. Williams,* 553 U.S.

285, 294, 128 S. Ct. 1830, 1839 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated.").

The surplusage that would result from Plaintiffs' interpretation also counsels in favor of reading "final" in the narrow sense of a "final order." Recall that § 3626(a)(2)'s "unless" clause says preliminary injunctions shall expire within 90 days unless the court does two things: (1) makes need-narrowness-intrusiveness findings for the entry of prospective relief under § 3626(a)(1), and (2) makes the order final. Under Plaintiffs' reading, making the order final means no more than making the need-narrowness-intrusiveness findings. Plaintiffs would therefore have us collapse the two requirements into a single requirement, effectively reading the "final order" requirement out of the statute. This would contravene the rule that a statute ought to be interpreted, where possible, to give effect to all its language. *See Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1300 (11th Cir. 2018), *aff'd sub nom. Barton v. Barr*, 140 S. Ct. 1442, 206 L. Ed. 2d 682 (2020).

Plaintiffs' interpretation also reads out other portions of the statute. Before the "unless" clause, § 3626(a)(2) already requires that the court find the preliminary relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm" when first issuing the preliminary injunction. If Plaintiffs are correct that "making the order final" only means

23

formally making the need-narrowness-intrusiveness findings, then there would be nothing left for the district court to do once the initial preliminary injunction order is issued.

Plaintiffs can only avoid this outcome by pretending that the PLRA allows district courts to issue preliminary injunctions and then choose whether to later make need-narrowness-intrusiveness findings. The court would only have to make such findings if it wanted the injunction to last beyond 90 days. Of course, the problem with this is that § 3626(a)(1)(A) is unequivocal that "[t]he court *shall not grant or approve any prospective relief unless the court* [makes need-narrowness-intrusiveness findings]."[11] This language cannot be squared with an interpretation that allows district courts to issue 90-day injunctions and only requires need-narrowness-intrusiveness findings—or even a complete preliminary injunction order, for that matter—if the court wants the injunction to last longer.

This reading also means the preliminary injunction cannot be effectively reviewed by a court of appeals until the district court makes the findings required for its issuance under Federal Rules of Civil Procedure 52(a). *Davis v. United States*, 422 F.2d 1139, 1141 (5th Cir. 1970) ("In the words of the Supreme Court, a

---

[11] Section 3626(a)(2) repeats this requirement for preliminary injunctions: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."

full and fair compliance with Rule 52(a) 'is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction.'" (quoting *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316, 60 S. Ct. 517, 520 (1940))).  Since an essential part of those findings for injunctions subject to the PLRA include the particularized need-narrowness-intrusiveness findings, *see United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1228, effective review of a PLRA injunction cannot be obtained until the district court makes those findings— perhaps weeks or even months after the injunction was issued.

Defendants' interpretation, by contrast, recognizes that § 3626(a)(2) contemplates two separate proceedings.  The district court must make the initial set of need-narrowness-intrusiveness findings after a hearing to impose the preliminary injunction in the first instance.  Then, under the "unless clause," the court must make a second set of findings before converting the preliminary injunction into a permanent injunction.  This is consistent with the model contemplated by the Federal Rules of Civil Procedure, which require separate findings for the issuance of preliminary and permanent injunctions.  *See* Fed. R. Civ. P. Rule 52(a)(1)&(2).  Because circumstances may change during the 90-day period in which the preliminary injunction is in place, this requirement furthers the PLRA's goal of eliminating unnecessary and overbroad prison injunctions.

As already noted, we agree with Plaintiffs that "making" a preliminary injunction order final is not the clearest way to speak of entering a permanent injunction. This does not discourage us from adopting Defendants' interpretation, however, because we believe this language merely reflects a common way of thinking and talking about the relationship between preliminary and permanent injunctions. It is not unusual to speak of a preliminary injunction merging with, becoming, or being converted into a permanent injunction. *See, e.g.*, *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314, 119 S. Ct. 1961, 1966 (1999) ("[A]n appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former *merges into* the latter." (emphasis added)); *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1361 n.25 (11th Cir. 2021) ("A preliminary injunction only *becomes* a permanent injunction when the district court includes a permanent injunction in its final judgment." (emphasis added)); *Associated Builders & Contractors Fla. E. Coast Chapter v. Miami-Dade Cnty.*, 594 F.3d 1321, 1323–24 (11th Cir. 2010) (per curiam) ("Once an order of permanent injunction is entered, any preliminary injunction *merges with it* . . . ." (emphasis added)); *Sec. & Exch. Comm'n v. First Fin. Grp. of Tex.*, 645 F.2d 429, 433 (5th Cir. 1981) ("Once an order of permanent injunction is entered . . . the order of preliminary injunction is *merged with it* . . . ." (emphasis added)); *Certified Grocers of Ill., Inc. v. Produce,*

26

*Fresh & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Empl., Drivers, Chauffeurs, Warehousemen & Helpers Union, Chic. & Vicinity, Ill., Local 703*, 816 F.2d 329, 330 (7th Cir. 1987) ("[T]he court *converted* the preliminary injunction to a permanent injunction." (emphasis added)); *In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 544 (9th Cir. 1996) ("[W]here a permanent injunction has been granted that supersedes the original preliminary injunction, the interlocutory injunction *becomes merged* in the final decree . . . ." (citation and quotations omitted) (emphasis added)); *Burbank-Glendale-Pasadena Airport Auth. v. City of Los Angeles*, 979 F.2d 1338, 1340 n.1 (9th Cir. 1992) ("Once an order of permanent injunction is entered, the preliminary injunction *merges with it* . . . ." (emphasis added)). This language reflects the functional continuity between preliminary and permanent injunctions—though they are put in place by separate and distinct orders, the nature of the relief is the same and the latter typically replaces the former without lapse. Thus, it is natural to think of a permanent injunction order as securing, or indeed "making final," a preexisting preliminary injunction.

Plaintiffs also argue that the phrase "[p]reliminary injunctive relief shall automatically expire . . . unless," shows that the "unless" clause establishes requirements for preliminary injunctions to continue beyond 90 days. Thus, Plaintiffs conclude, "making the order final" cannot mean entering a permanent

27

injunction because that would cause the preliminary injunction to cease instead of continue.

Plaintiffs' argument rests on the assumption that the word "expire" in § 3626(a)(2) means simply "to come to an end" or "cease." *Expire*, Webster's Third New International Dictionary at 801. If this were so, then an action which prevents expiration of a preliminary injunction would, by definitional necessity, cause the preliminary injunction to continue. However, we have previously recognized that § 3626(a)(2) creates a particular type of expiration—expiration by operation of law. *United States v. Sec'y, Fla. Dep't Corr.*, 778 F.3d at 1228. Preventing a preliminary injunction from expiring by operation of law would not necessarily mean the preliminary injunction continues. Indeed, the "merging" that occurs when a permanent injunction is entered on top of a preexisting preliminary injunction causes both the preliminary injunction to cease *and* prevents its expiration by operation of law. We therefore find the language consistent with Defendants' reading of the provision.

Finally, Plaintiffs argue that if "making the order final" means entering a permanent injunction, then the "unless" clause of § 3626(a)(2) would be superfluous because § 3626(a)(1) already establishes the requirements for permanent injunctive relief. This argument fails to recognize that the "unless" clause governs a situation distinct from the one governed by § 3626(a)(1). As we

28

have explained, § 3626(a)(1) governs the issuance of prospective relief in the first instance, while § 3626(a)(2)'s "unless" clause governs the issuance of permanent injunctive relief when a preliminary injunction is already in place. The "unless" clause makes clear what § 3626(a)(1) alone might have left ambiguous—that a court must make need-narrowness-intrusiveness findings when it converts a preliminary injunction into a permanent injunction, even if it already made those findings when issuing the preliminary injunction initially.[12]

We acknowledge that 90 days is a short amount of time to reach a final decision on the merits of a complex civil case about prison conditions. Nonetheless, that is what the text of § 3626(a)(2) calls for. In light of our reading that preliminary injunctions respecting prison conditions expire after 90 days by operation of law unless the District Court makes additional need-narrowness-intrusiveness findings and enters a permanent injunction, we conclude that the preliminary injunction here expired long ago.

---

[12] We note that § 3626(a)(2) could be accused of suffering from surplusage for another reason. After all, if § 3626(a)(1) already covers "any prospective relief" and requires need-narrowness-intrusiveness findings, there would be no need to say that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." § 3626(a)(2). But this sentence does play an important role: though this section authorizes the court to enter both a temporary restraining order *or* a preliminary injunction order, it makes clear that only a preliminary injunction order requires the need-narrowness-intrusiveness findings. *Id.*

C.

Our precedent is clear that when a preliminary injunction expires by operation of law under § 3626(a)(2), any appeal from that injunction is moot. *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1228–29. Defendants nonetheless urge us to decide this appeal under the exception to mootness for disputes that are "capable of repetition, yet evading review." This exception applies in "exceptional situations" where "(1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Id.* at 1229; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S. Ct. 1660, 1669 (1983). In a previous PLRA case involving an expired preliminary injunction, we held that this exception did not apply merely because the district court might enter another preliminary injunction without making additional need-narrowness-intrusiveness findings and making the order final within 90 days. *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1229.

Our contrary precedent notwithstanding, Defendants argue there is a "reasonable expectation" they will be subject to yet another injunction requiring them to provide psychiatrically disabled female inmates with regular out-of-cell time and to improve the sanitary conditions in their cells. Defendants do not

attempt to argue that any subsequent injunction will evade review, and we do not believe one would.

Defendants can obtain review when the District Court enters a permanent injunction after a trial on the merits, assuming Plaintiffs succeed. *See Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1121 (11th Cir. 1995) (declining to apply the exception for cases "capable of repetition, yet evading review" in part because "the district court retained jurisdiction of the case, which may be litigated on the merits and the outcome appealed"); *Tropicana Prods. Sales, Inc. v. Phillips Brokerage Co.*, 874 F.2d 1581, 1583–84 (11th Cir. 1989) (same). We can then review the injunction under 28 U.S.C. § 1291 as part of a final judgment.

Because this appeal is moot and no exception to mootness applies, we dismiss the appeal and vacate the District Court's order imposing the preliminary injunction and its addendum order stating findings and conclusions in support of the injunction. *See United States v. Sec'y Fla. Dep't of Corr.*, 778 F.3d at 1229–30.

**SO ORDERED.**

31

WILSON, Circuit Judge, dissenting:

I disagree with the majority's interpretation of 18 U.S.C. § 3626(a)(2) of the Prison Litigation Reform Act (PLRA). Because I do not believe that the preliminary injunction expired after 90 days, I would hold that the case is not moot and the finalized preliminary injunction complies with the PLRA.

The majority holds that the entry of a permanent injunction is necessary to prevent a preliminary injunction from expiring after 90 days. It claims that its holding "follows from the PLRA's model for injunctive relief." Maj. Op. at 20. I disagree. Though the PLRA's "model for injunctive relief" is one that disfavors judicial involvement in prison administration, no statute "pursues its purpose at all costs." Antonin Scalia & Bryan A. Garner, *Reading Law* 57 (2012). Accordingly, we must give due regard to the text of § 3626(a)(2) and "what [the statute] chooses *not* to do." *Id.* The PLRA does not require a permanent injunction be issued to prevent a preliminary injunction from expiring after 90 days.

## I.

In passing the PLRA, Congress sought to limit litigation brought by prisoners and address what it perceived as judicial overreach in the courts. *See* 141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) (remarks of Sen. Dole) ("These guidelines will work to restrain liberal Federal judges who see violations o[f] constitutional rights in every prisoner complaint and who have used these

complaints to micromanage State and local prison systems."); *see also Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (explaining that the PLRA was passed "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints").

By those measures, the PLRA has succeeded. The law has placed substantial obstacles before prisoners seeking to file civil suits and has posed restrictions on the judicial relief that can be awarded. The number of federal civil rights suits filed by prisoners has dropped significantly since the law's enactment, even as the number of prisoners has risen. *See* Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1583 (2003) (In 1995, the year before the PLRA, prisoners filed 39,008 federal civil rights suits, or 24.6 suits per 1,000 inmates. In 2001, 22,206 such suits were filed, a rate of 11.4 per 1,000 inmates.).

The PLRA's obstacles to prisoner civil rights suits are numerous. Just to name a few, the law poses an exhaustion requirement on prisoners seeking to file suits, 42 U.S.C. § 1997e(a); makes prospective relief terminable after two years unless a court makes written findings that it remains necessary, § 3626(b); and—as discussed at length in the parties' briefing—requires any prospective relief to satisfy a need-narrowness-intrusiveness analysis, § 3626(a)(1). But those obstacles

33

do not include a requirement that a *permanent* injunction be issued to prevent a preliminary injunction from expiring after 90 days.

The majority's reasons for reaching the contrary conclusion are unavailing. The majority asserts that "final order" is a commonplace legal term, widely understood to mean an order that disposes of a case. I agree. The problem here, though, is that § 3626(a)(2) does not use this commonplace legal term—it instead uses the phrase "makes the order final." This word choice seems intentional. Just a few subsections later, the statute does use the term "final order." § 3626(e)(2)(b) ("ending on the date the court enters a final order ruling on the motion"). Because "final order" is a commonplace legal term with a well-settled meaning, the use of a different term in § 3626(a)(2) indicates that Congress likely intended a different meaning.

I agree with the Plaintiffs that the more natural interpretation of "final" here is "not to be processed further" and "utilized as is." *Final*, Webster's Third New International Dictionary 851 (1993). In the context of § 3626(a)(2), a preliminary injunction is finalized, and does not expire, if within 90 days of issuance the district court makes all required findings and issues a complete and final preliminary injunction order.

The majority concedes that this interpretation "has some merit." Maj. Op. at 23. This is not only because Congress could have imposed a firm 90-day limit on

34

preliminary injunctions in a much clearer and simpler way (by simply removing the "unless" clause altogether) but also because "making an order final" is an odd way to talk about entering a permanent injunction (which is ordinarily entered after a full trial on the merits).

Nonetheless, the majority asserts that its interpretation is "better" because "the word 'final' amidst talk of 'preliminary injunctive relief' and 'order' naturally evokes, to a legally trained mind, the concept of a 'final order.'" *Id.* This is so, it explains, because the "surrounding language strongly suggests that final is being used in a "technical legal sense." *Id.* I disagree with that interpretation. The technical legal terms surrounding the phrase "makes the order final" are not enough to essentially transform the words into the term "final order."

What the majority does today prevents preliminary injunctions from serving their core equitable purpose of protecting plaintiffs from the substantial threat of irreparable injuries while their claims are pending. *See Nnadi v. Richter*, 976 F.2d 682, 690 (11th Cir. 1992). To issue a preliminary injunction, a district court must find that 1) the moving party has a substantial likelihood of success on the merits; 2) the moving party will be irreparably injured without the injunction; 3) the threatened injury to the moving party outweighs the harm the injunction might cause the opposing party; and 4) the injunction would not be adverse to the public interest. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir.

35

2006). In a PLRA case, the court must also give substantial weight to "any adverse impact on public safety or the operation of a criminal justice system" and find that the preliminary injunction satisfies the need-narrowness-intrusiveness analysis. *See* § 3626(a)(2). But even if a district court makes all of these findings and believes the preliminary injunction is warranted, the majority today seeks to limit that relief to only 90 days, regardless of how long the case takes to litigate.

Preliminary injunctions have been issued since as early as the mid-1800s to prevent irreparable injuries while cases are litigated. *See In re Slaughter-House Cases*, 77 U.S. (10 Wall.) 273 (1869). "Surrounding language" is not enough to disrupt this long-running equitable practice. Furthermore, using the PLRA's stated purpose of reducing judicial involvement in prison management to reach this result disregards "what [the PLRA] chooses *not* to do." Scalia & Garner, *Reading Law*, at 57.

## II.

The majority also asserts that the Plaintiffs' interpretation of the statute is incorrect because it collapses the two requirements of the "unless" clause, "effectively reading the 'final order' requirement out of the statute." Maj. Op. at 24. I disagree. First, there is no "final order" requirement in the statute. The statute requires a court to "make[] the order final." When read in context of the full sentence it becomes evident that the word "order" refers to the preliminary

injunction order. *See United States v. Williams*, 553 U.S. 285, 294 (2008).[1]

Nowhere does the statute require the entry of a "final order."

Second, there are still two distinct requirements on the district court. To comply with the PLRA, the district court must 1) make the findings required by § 3626(a)(1), and 2) finalize the preliminary injunction by issuing an order that fully and finally sets out the bounds of the preliminary injunction. That is exactly what the district court did here. After initially issuing the preliminary injunction, the court used the 90-day period to solicit information from the parties and issue an order that contained the court's detailed need-narrowness-intrusiveness findings and finalized the bounds of the preliminary injunction. That both requirements could be fulfilled in one order does not necessarily collapse them.

The Plaintiffs' interpretation also does not read out other portions of the statute, as the majority claims. *See* Maj. Op. at 24. While § 3626(a)(2) does require preliminary injunctive relief to be "narrowly drawn, extend no further than necessary. . . and be the least intrusive means necessary to correct th[e] harm," it does not require these findings to be explicitly made, as is required to comply with

---

[1] The full sentence reads: "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." § 3626(a)(2).

subsection (a)(1).[2] Because the section regarding issuance of a preliminary injunction does not include the word "finds," the language indicates that a district court could issue a preliminary injunction, stating that it has made the requisite considerations and the need-narrowness-intrusiveness requirement is met, and then have up to 90 days to explain its analysis and findings in writing. That is what the district court did here, and I believe that is enough to prevent the preliminary injunction from expiring.

## III.

The majority's broad overview of the case also fails to portray the reality that women with serious psychiatric disabilities in the South Fulton Jail mental health pods will continue to face while the case is litigated without a preliminary injunction in place.

The Plaintiffs summarize the Sheriff's official records, photographs and video recordings in the record, and firsthand accounts of investigators who inspected the pods: Women in the mental health pods are subject to long-term isolation in horrific and repulsive conditions. Women have "been found lying

---

[2] While almost identical, the different wording in subsections (a)(1) and (a)(2) is significant. For a preliminary injunction, the "relief must *be* narrowly drawn, extend no further than necessary. . . and be the least intrusive means necessary to correct that harm." § 3626(a)(2) (emphasis added). But under § 3626(a)(1)(A), a "court shall not grant or approve any prospective relief unless the court *finds* that such relief" meets the need-narrowness-intrusiveness requirement. § 3626(a)(1)(A) (emphasis added). The term "finds" requires particularized findings, or an explanation of how the order meets the requirements. *See United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1227–28 (11th Cir. 2015).

catatonic on the floor, screaming unintelligibly, speaking incoherently, banging their heads against cell walls, repeatedly attempting suicide, living in cells with feces smeared on the walls or urine pooled on the floors, and enduring extraordinary squalor as their mental health deteriorated, causing harm up to and including death." Despite the medical recognition that isolation for seriously mentally ill people "can be as clinically distressing as physical torture," Jeffrey Metzner et al., *Solitary Confinement and Mental Illness in U.S. Prisons*, 38 J. Am. Acad. Psych. & L. 104, 104 (2010), women with the most serious psychiatric disorders at South Fulton Jail are held in isolation on a virtually around-the-clock basis.

That is what will continue to happen while the case is pending if the preliminary injunction is not in place.

The majority asserts that the 90-day time limit for preliminary injunctions "expedites the lifecycle of prison cases." Maj. Op. at 17. But it provides no support or explanation for how or why litigation will be expedited. Rather than expedite cases, I fear the 90-day limit will leave plaintiffs vulnerable to likely unconstitutional conduct as the merits are litigated at a normal pace.

The majority also fails to grapple with the length of time that cases take to proceed to a trial on the merits. Again, it claims without support that "[o]nce a preliminary injunction issues, the plaintiff's entitlement to a permanent injunction

39

is typically ascertained within 90 days, greatly condensing the litigation lifecycle." Maj. Op. at 19. While that could be true for some cases, it is certainly not the case in many class action prisoner civil rights suits, like this one. This case was filed in April of 2019 and the preliminary injunction was initially granted in July of 2019. It appears that currently—in the summer of 2021—the parties are only now litigating summary judgment motions.

IV.

The majority's holding today threatens to leave prisoners in vulnerable, likely unconstitutional situations without relief during the pendency of their lawsuits. Because this is not what the language of the PLRA requires nor can it be reconciled with the equitable rationales for the preliminary injunction, I respectfully dissent.