[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10086

_____

D.C. Docket No. 1:12-cv-22958-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

Before ED CARNES, Chief Judge, RESTANI,[*] Judge, and MERRYDAY,[**]
District Judge.

ED CARNES, Chief Judge:

---

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by
designation.

[**] Honorable Steven D. Merryday, United States District Judge for the Middle District of
Florida, sitting by designation.

There is a vast amount of federal law.  So much that no one can hope to keep it all in mind, much less master the mass of it.  But it was not always so.  The current universe of federal law did begin with a bang, although not a big one.  It began with a Constitution on four parchment pages, followed by a Bill of Rights on one more.[1]  But the Constitution begat Congress, and Congress begat statutes — lots and lots of statutes — the current version of them fills 45,000 pages of the United States Code.[2]  Those statutes begat hundreds of administrative agencies, and many of those agencies begat regulations — lots and lots of them.  So many that the Code of Federal Regulations fills 235 volumes and is 175,000 pages long, give or take a few thousand pages.[3]  As the number of statutes and regulations has multiplied exponentially, so has decisional law.  Supreme Court decisions fill 573 volumes of the official United States Reports, while federal court of appeals decisions fill 2,000 or so volumes of the Federal Reporter series.

---

[1] The parchment pages containing the Constitution are 28 and 3/4 inches by 23 and 5/8 inches.  The Bill of Rights parchment page is 28 and 1/2 inches by 28 and 1/4 inches.

[2] This number is based on the 2012 edition of the United States Code, excluding volumes 35 through 41 (which contain conversion tables and indices) and annual supplements.

[3] Those numbers are based on the latest official statistics from the Office of the Federal Register.  See Office of the Federal Register, Code of Federal Regulations – Total Pages 1938 Through 1949, and Total Volumes and Pages 1950 Through 2013, https://www.federalregister.gov/uploads/2014/04/OFR-STATISTICS-CHARTS-ALL1-1-1-2013.pdf (last visited Jan. 27, 2015).

Truly, federal laws have multiplied to become "beyond number, like the stars in the sky and the sand on the seashore."[4]  Charting a course through this universe of federal law, which is expanding at an ever-accelerating rate, can be difficult.  Attorneys and judges sometimes overlook a statutory provision, a regulation, or a decision that directly controls a case.  We have all done it occasionally.  It happened in this case.

## I.

In August of 2012 the United States filed a civil suit under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., alleging that the failure of the State of Florida to provide a kosher diet program to all of its prisoners with sincere religious grounds for keeping kosher was a substantial burden on those prisoners' religious exercise.  The complaint requested both injunctive and declaratory relief under the statute.  See 42 U.S.C. § 2000cc-2(a).

After the district court denied Florida's motion to dismiss the complaint, the State issued a new policy in March 2013, formally titled "Procedure 503.006" and informally referred to as "the Religious Diet Program."  That program would

---

[4] Genesis 22:17 (New Living Translation); see also Raymond Chandler, The Long Goodbye 315 (Vintage Books 1988) (1953) ("[Lawyers] write the laws for other lawyers to dissect in front of other lawyers called judges so that other judges can say the first judges were wrong and the Supreme Court can say the second lot were wrong.  Sure there's such a thing as law.  We're up to our necks in it.").

provide prisoners with kosher meals using a combination of "prepackaged, certified kosher entrees" and kosher items from each prison's "normal food service operations." In addition to outlining the contents of the meals, Procedure 503.006 contains a number of provisions that determine a prisoner's eligibility for the program. Three of those provisions are at issue in this appeal. First is the "sincerity test," which Florida uses as a mechanism for initially determining whether a prisoner should be eligible to receive kosher meals. The second and third contested provisions are part of what the district court labeled the "Zero Tolerance Rule." Those two provisions mandate the removal from the program of any prisoner who (1) purchases, possesses, or consumes an item that is not listed as "kosher" by Florida's supply contractors, or (2) barters using a kosher food item.

When the United States learned about Procedure 503.006 in April 2013, it filed a motion for a preliminary injunction. It requested that the injunction: (1) require Florida "to provide a certified kosher diet to all prisoners with a sincere religious basis for keeping kosher," and (2) prohibit Florida from implementing its "new Religious Diet Program to the extent it violates RLUIPA." After holding an evidentiary hearing, the district court granted the motion. The preliminary injunction the court entered required Florida to "provide a certified kosher diet to

4

all prisoners with a sincere religious basis for keeping kosher"[5] and prevented the State from enforcing the eligibility provisions of Procedure 503.006 mentioned above.

The court's order did not, however, mention the need-narrowness-intrusiveness criteria for preliminary injunctions established by the Prison Litigation Reform Act (PLRA). See 18 U.S.C. § 3626(a)(2). Nor did the court "make[] the order final before the expiration of the 90-day period" beginning on the entry of the order. See id. Florida filed a notice of interlocutory appeal in January 2014. While this interlocutory appeal has been pending, the district court has held monthly status conferences between the parties. But the court has not made any need-narrowness-intrusiveness findings regarding the preliminary injunction, nor has it issued an order finalizing the preliminary injunction. See 18 U.S.C. § 3626(a)(2).

## II.

Although the parties did not raise any question about mootness, we have an obligation to notice and decide mootness issues. See Pac. Ins. Co. v. Gen. Dev. Corp., 28 F.3d 1093, 1096 (11th Cir. 1994) ("It is incumbent upon this court to consider issues of mootness sua sponte . . . ."). Mootness is a question of law that

---

[5] The district court's original order required Florida to provide kosher meals on a statewide basis "no later than July 1, 2014." The court later vacated that July 1 deadline and adopted a region-by-region timetable proposed by Florida.

we consider de novo. See United States v. Logal, 106 F.3d 1547, 1551 (11th Cir. 1997). We must address it at the outset because we have no jurisdiction to decide moot questions. See United States v. Shenberg, 90 F.3d 438, 440 (11th Cir. 1996). The mootness question is: If a preliminary injunction expires automatically by operation of statute, and none of the parties notice, does it moot the interlocutory appeal challenging that injunction? We conclude that, like the proverbial tree, if an issue falls in the forest of federal law, courts must take notice of the sound even if the parties did not hear it.[6]

## A.

A suit challenging prison conditions under RLUIPA is governed by the PLRA.[7] See Cutter v. Wilkinson, 544 U.S. 709, 723 n.12, 125 S. Ct. 2113, 2123 n.12 (2005) (citing 42 U.S.C. § 2000cc-2(e) for the proposition that "nothing in RLUIPA shall be construed to amend or repeal the Prison Litigation Reform Act of

---

[6] Apologies to Bishop Berkeley. See The History of Philosophy: Modern Philosophy from 1500 CE to the Present 113 (Brian Duignan ed., 2011) (explaining that George Berkeley's philosophy of phenomenalism was the inspiration for the "question of whether a tree falling in an uninhabited forest makes a sound").

[7] That is true even though the plaintiff in this case is the United States and not an individual prisoner. The PLRA provision at issue here states that it applies "[i]n any civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(2) (emphasis added). And the subsection defining "civil action with respect to prison conditions" states that it "means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." Id. § 3626(g)(2) (emphasis added). The provision's plain language makes it applicable regardless of whether the plaintiff is the government or a prisoner. Cf. United States v. Puerto Rico, 642 F.3d 103, 104 (1st Cir. 2011) (applying a separate provision of § 3626 to a suit brought by the United States).

6

1995") (quotation marks omitted). The PLRA provides that "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry" unless the district court does two things. 18 U.S.C. § 3626(a)(2). The first thing the district court must do to keep a preliminary injunction alive past the 90-day deadline is "make[] the findings required under subsection (a)(1) for the entry of prospective relief." Id. The second is to "make[] the order final before the expiration of the 90-day period." Id.

As for the findings required under subsection (a)(1), the statute directs that the district court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. § 3626(a)(1)(A) (emphasis added). In Cason v. Seckinger, we interpreted the term "written findings" in § 3626(b)(3), which governs the termination of prospective relief by motion of a party, in the context of a motion to terminate a consent decree. 231 F.3d 777, 785 (11th Cir. 2000). We held that a district court may not allow consent decrees to remain in effect despite a motion to terminate, unless it makes:

> particularized findings . . . that each requirement imposed by the consent decrees satisfies the need-narrowness-intrusiveness criteria . . . . It is not enough to simply state in conclusory fashion that the requirements of the consent decrees satisfy those criteria. Particularized findings, analysis, and explanations should be made as

7

> to the application of each criteri[on] to each requirement imposed by the consent decrees.

Id.[8]  We see no reason why the term "finds" in § 3626(a)(1) does not require the same particularity as the term "findings" in § 3626(b)(3).  See Cason, 231 F.3d at 785; see also Erlenbaugh v. United States, 409 U.S. 239, 244, 93 S. Ct. 477, 480 (1972) ("[I]ndividual sections of a single statute should be construed together . . . .").  We thus read § 3626(a)(1) to require particularized findings that each requirement imposed by the preliminary injunction satisfies each of the need-narrowness-intrusiveness criteria.

In this case the district court did not make those particularized findings or finalize its order.  The court entered its preliminary injunction order on December 6, 2013.  The 90-day clock began ticking the next day.  See 18 U.S.C. § 3626(a)(2); Fed. R. Civ. P. 6(a)(1).  Neither the December 6 order nor any of the court's later orders contained specific findings that any of the preliminary

---

[8] In Cason, we interpreted the terms in § 3626(b)(3).  See 231 F.3d at 785.  That paragraph provides:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3) (emphasis added).  In comparison, § 3626(a)(1) states that a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  Id. § 3626(a)(1)(A) (emphasis added).

injunction's requirements satisfied the need-narrowness-intrusiveness criteria in § 3626(a)(2), much less an explanation of how they did.  The court also did not issue an order finalizing its December 6 order.  As a result, the preliminary injunction expired by operation of law on Thursday, March 6, 2014.[9]  See 18 U.S.C. § 3626(a)(2); Mayweathers v. Newland, 258 F.3d 930, 936 (9th Cir. 2001) ("Because the district court in the present case did not make either of the preliminary injunctions at issue final within 90 days, both injunctions expired pursuant to [§ 3626(a)(2)].").  The question thus becomes whether the expiration of the preliminary injunction renders this appeal moot.

## B.

An appeal is moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." Calderon v. Moore, 518 U.S. 149, 150, 116 S. Ct. 2066, 2067 (1996) (quotation marks omitted).  One such intervening event is the expiration of a preliminary

---

[9] In response to our request for supplemental briefing on the mootness issue, Florida argued that the preliminary injunction did not expire on March 6 because, after entering the preliminary injunction order, the district court issued several later orders clarifying the scope of the injunction.  None of the orders to which Florida points renewed the preliminary injunction.  They merely clarified the scope of the existing injunction.  Clarification is not renewal.  Cf. Mayweathers v. Newland, 258 F.3d 930, 936 (9th Cir. 2001) (holding that § 3626(a)(2) permits a district court to "enter[ a] second injunction after the first one expire[s]").  In any event, it does not matter, because the last of the orders that Florida cites was entered on June 30, 2014.  So even if we accepted Florida's renewal argument, the preliminary injunction would have expired on Monday, September 29, 2014.  Cf. Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

9

injunction that is being challenged in an interlocutory appeal.  See Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri, 361 U.S. 363, 367, 80 S. Ct. 391, 394 (1960); Brooks v. Ga. State Bd. of Elections, 59 F.3d 1114, 1119 (11th Cir. 1995) ("[T]his court has consistently held that the appeal of a preliminary injunction is moot where the effective time period of the injunction has passed.") (citing Tropicana Prods. Sales, Inc. v. Phillips Brokerage Co., 874 F.2d 1581, 1582–83 (11th Cir. 1989) and Pac. Ins. Co. v. Gen. Dev. Corp., 28 F.3d 1093, 1096 (11th Cir. 1994)).[10]  If the preliminary injunction has expired, it no longer has legal effect on the parties, and a decision by this court affirming or vacating the defunct injunction "cannot affect the rights of [the] litigants." DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705 (1974).

The preliminary injunction in the present case passed on to injunction heaven on March 6, 2014.  And with it died this appeal, unless some exception to the mootness doctrine can save it.  See Sierra Club v. Martin, 110 F.3d 1551, 1554 (11th Cir. 1997).  The only one that could arguably apply here is the one for disputes that are "capable of repetition, yet evading review."  See Strickland v. Alexander, 772 F.3d 876, 887 (11th Cir. 2014).  It applies where "(1) there [is] a

---

[10] Earlier decisions by this Court recognized "the traditional rule that issues raised by an expired injunction are not moot if one party was required to post an injunction bond." Medtronic, Inc. v. Janss, 729 F.2d 1395, 1398–99 (11th Cir. 1984) (quotation marks omitted). Here, neither party claims to have posted an injunction bond, and our own review of the record confirms that none was posted.

10

reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." Martin, 110 F.3d at 1554.

That exception does not apply here because Florida has not demonstrated a probability that any additional injunction the district court enters will evade review. In arguing about the government's motion for a preliminary injunction, the parties did not mention the PLRA in any of their briefs or during the hearing on the motion. And the district court did not mention the statute in its order entering the preliminary injunction or any of its later orders regarding the scope of that injunction. It is apparent that the parties and the district court simply overlooked the findings and finalization requirements of 18 U.S.C. § 3626(a)(2). There is no basis for us to predict that if the United States seeks a new preliminary injunction, the district court (assuming it grants the motion) will decline to make the required need-narrowness-intrusiveness findings or will refrain from finalizing its order. See 18 U.S.C. § 3626(a)(2). Or to put it in terms of the mootness exception, there is no "reasonable expectation" that any new preliminary injunction would expire before it reached this Court on appeal. See Martin, 110 F.3d at 1554. The issues underlying the preliminary injunction the district court entered are capable of repetition but we do not expect that they will evade review if they arise again.

11

### III.

When an issue becomes moot on appeal, we not only "dismiss as to the mooted issue, but also vacate the portion of the district court's order that addresses it." De La Teja v. United States, 321 F.3d 1357, 1364 (11th Cir. 2003); see United States v. Ghandtchi (In re Ghandtchi), 705 F.2d 1315, 1316 (11th Cir. 1983) ("Where a case becomes moot after the district court enters judgment but before the appellate court has issued a decision, the appellate court must dismiss the appeal, vacate the district court's judgment, and remand with instructions to dismiss the case as moot."). We vacate the moot part of the order because "a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness to be forced to acquiesce in the judgment." De La Teja, 321 F.3d at 1364 (quotation marks omitted). Florida's appeal from the now expired preliminary injunction is therefore **DISMISSED** as moot, but the district court's orders entering and clarifying that preliminary injunction are **VACATED**.

12