[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13396

_____

RYAN GRAHAM,
as individual,
LIBERTARIAN PARTY OF GEORGIA, INC.,
a Georgia nonprofit corporation,

                                        Plaintiffs-Appellants,

*versus*

ATTORNEY GENERAL, STATE OF GEORGIA,
GEORGIA GOVERNMENT TRANSPARENCY
AND CAMPAIGN FINANCE COMMISSION,
CHAIRMAN OF GEORGIA GOVERNMENT
TRANSPARENCY AND CAMPAIGN FINANCE
COMMISSION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-03613-MHC

_____

Before NEWSOM, BRANCH, and LUCK, Circuit Judges.

BRANCH, Circuit Judge:

This appeal presents a constitutional challenge to one of Georgia's campaign-finance laws. Section 21-5-34.2 of the Georgia Code allows a "leadership committee" to accept political contributions that exceed the limits usually imposed on candidates. O.C.G.A. § 21-5-34.2. Leadership committees may be formed only by the Governor, the Lieutenant Governor, and the nominee of a *political party*—but not a *political body*—for Governor or Lieutenant Governor, though a nominee may only do so in the year in which he is nominated. Under Georgia law, the Democratic and Republican parties are *political parties*, while the Libertarian Party is a *political body*.

The Libertarian Party of Georgia and its nominee for the office of Lieutenant Governor in the 2022 general election, Ryan Graham, argue that O.C.G.A. § 21-5-34.2 violates the First Amendment and the Equal Protection Clause of the Fourteenth

22-13396                Opinion of the Court                3

Amendment by excluding them from forming a leadership committee and from accepting unlimited contributions like their Republican and Democratic counterparts. The district court denied Graham and the Libertarian Party's motion for a preliminary injunction because it concluded they lacked standing and didn't satisfy the prerequisites for the issuance of a preliminary injunction. Graham and the Libertarian Party timely appealed.

After careful review and with the benefit of oral argument, we conclude that this case is moot. Accordingly, we vacate the underlying judgment, dismiss the appeal, and remand for the district court to dismiss the case as moot.

## I.        Background

Before we lay out the facts of this case, we first explain certain parts of the Georgia Government Transparency and Campaign Finance Act (the "Campaign Finance Act"). Under the Campaign Finance Act, campaign contributions for candidates of statewide office[1] are limited by the following dollar amounts: $7,600 for primary and general elections, and $4,400 for runoff elections. O.C.G.A §§ 21-5-41(a), (k).[2] In July of 2021, an

---

[1] Georgia law provides for lower limits for offices that are not statewide, O.C.G.A § 21-5-41(b), but only statewide offices are at issue in this appeal.

[2] O.C.G.A § 21-5-41(a) provides:

> (a) No person, corporation, political committee, or political party shall make, and no candidate or campaign committee shall receive from any such entity, contributions to any

amendment to the Campaign Finance Act (hereinafter "the Leadership Committee Amendment") created the concept of "leadership committees." *Id.* § 21-5-34.2.   The Leadership Committee Amendment provides, in relevant part, for the creation, use, and powers of leadership committees by governors, lieutenant governors, or candidates of those offices nominated by political parties (as defined by Georgia law):

> (a) As used in this Code section, the term "leadership committee" means a committee, corporation, or organization chaired by the Governor, the Lieutenant Governor, the nominee of a political party for Governor selected in a primary election in the year in which he or she is nominated, or the nominee of a political party for Lieutenant Governor selected in a

---

candidate for state-wide elected office which in the aggregate for an election cycle exceed:

   (1) Five thousand dollars for a primary election;

   (2) Three thousand dollars for a primary run-off election;

   (3) Five thousand dollars for a general election; and

   (4) Three thousand dollars for a general election runoff.

O.C.G.A § 21-5-41(k) provides that these contribution limits must be "raised or lowered in increments of $100.00" to adjust for "inflation or deflation" at "the end of each gubernatorial election cycle[.]"  The limits noted above were in place for the 2022 election. *See Contribution Limits*, Ga. Gov't Transparency & Campaign Fin. Comm'n, https://perma.cc/HG9W-V3X2 (last visited July 23, 2024) (showing limits effective August 2021, adjusted per inflation and under O.C.G.A. § 21-5-41(k)).

primary election in the year in which he or she is nominated. . . .

(b) A leadership committee may receive contributions from persons who are members or supporters of the leadership committee and expend such funds as permitted by this Code section.

(c) If a person chairing a leadership committee ceases to hold the office or the status as a nominee of a political party as described in subsection (a) of this Code section, such person shall transfer the remaining assets of the leadership committee, if any, to another leadership committee within 60 days, name an eligible person as the new chairperson of the leadership committee within 60 days, or dispose of the leadership committee's assets as provided by Code Section 21-5-33.

(d) A leadership committee may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate, may defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office, and may defray ordinary and necessary expenses incurred in connection with a public officer's fulfillment or retention of such office.

(e) . . . . *The contribution limits in Code Section 21-5-41 shall not apply to contributions to a leadership committee or expenditures made by a leadership committee in support of a candidate or a group of named candidates.* . . .

> (f) A leadership committee shall be a separate legal entity from a candidate's campaign committee and shall not be considered an independent committee.

*Id.* (emphasis added). At issue in this appeal is Section 21-5-34.2(e), which provides that a leadership committee is not subject to the campaign contribution limits imposed on candidates running for statewide office.[3] *Id.* § 21-5-34.2(e).

Under the Leadership Committee Amendment, leadership committees may be formed by "the Governor, the Lieutenant Governor, [and] the nominee of a *political party* for [those offices] selected in a primary election[.]" *Id.* § 21-5-34.2(a) (emphasis added). Georgia law defines a political party as any political organization that nominated a candidate in the preceding gubernatorial or presidential elections who "polled at least 20 percent of the total vote cast" in the state or nation, respectively.

---

[3] The Attorney General and the Georgia Government Transparency and Campaign Finance Commission ("the Commission") enforce the Campaign Finance Act. O.C.G.A. § 21-5-6(b)(14).

22-13396            Opinion of the Court                    7

*Id.* § 21-2-2(25).[4]  Any political organization that does not meet the definition of a political party is a political body.  *Id.* § 21-2-2(23).[5]

We now turn to the facts of this case.  Graham ran for Lieutenant Governor in 2022 as the Libertarian Party's nominee. The Libertarian Party had not polled at least 20 percent of the total votes cast in the previous elections and was thus considered a political body, not a political party.[6]  Because the Libertarian Party

---

[4] O.C.G.A. § 21-2-2(25) provides:

> "Political party" or "party" means any political organization which at the preceding:
>
> > (A) Gubernatorial election nominated a candidate for Governor and whose candidate for Governor at such election polled at least 20 percent of the total vote cast in the state for Governor; or
> >
> > (B) Presidential election nominated a candidate for President of the United States and whose candidates for presidential electors at such election polled at least 20 percent of the total vote cast in the nation for that office.

[5] O.C.G.A. § 21-2-2(23) provides that a "political body" is "any political organization other than a political party."

[6] In the 2020 presidential election, the Libertarian Party candidate gained approximately 1.2 percent of the vote.  Fed. Elections Comm'n, Federal Elections 2020: Election Results for the U.S. President, the U.S. Senate and the U.S. House of Representatives 5 (Eileen J. Leamon et al. eds., 2022), https://perma.cc/6GVN-PSKX.

In Georgia's 2018 gubernatorial election, the Libertarian Party candidate garnered less than 1 percent of the vote. *November 6, 2018: General Election*, Ga. Sec'y of State, https://perma.cc/EUL7-49G2 (last updated Nov. 17, 2018).

8                    Opinion of the Court                    22-13396

was not a political party, Graham could not form a leadership committee.[7]  Without a leadership committee, Graham remained subject to the contribution limits under the Campaign Finance Act.

On September 8, 2022, Graham and the Libertarian Party sued the Attorney General and the Commission, and they later added the Chair of the Commission (together, "Appellees"). Graham and the Libertarian Party argued that O.C.G.A. § 21-5-34.2—the Leadership Committee Amendment to the Campaign Finance Act—violated free speech and equal protection rights because it "allow[ed] the Republican and Democratic nominees for Lieutenant Governor to raise funds in unlimited amounts while Graham remain[ed] subject to the $7,600 limit."[8]  Graham and the Libertarian Party sought "declaratory and injunctive relief prohibiting state officials from enforcing O.C.G.A. § 21-5-34.2 in a manner that violates [their] constitutional rights."

Beyond setting forth the relevant Georgia law, Graham and the Libertarian Party's nine-page complaint presented only these

_____

We take judicial notice of these facts as they are "agency record[s]." *United States v. Howard*, 28 F.4th 180, 186 n.2 (11th Cir.), *cert. denied sub nom. Bramwell v. United States*, 143 S. Ct. 165 (2022).

[7] *Run for Office in Georgia*, Libertarian Party of Ga., https://perma.cc/8PEU-TJNN (last visited July 23, 2023).

[8] While not fully fleshed out in the complaint, Graham and the Libertarian Party's argument appears to be that the Leadership Committee Amendment threatens prosecution for participating in protected political activity (in violation of the First Amendment) and that he is denied equal treatment under the Campaign Finance Act (in violation of the Equal Protection Clause).

facts relating to how the Leadership Committee Amendment affected them in the 2022 election and would affect future elections in Georgia:

> 6. Ryan Graham . . . . is the nominee of the Libertarian Party of Georgia for the office of Lieutenant Governor in the 2022 general election. . . . Graham wants to chair a leadership committee for the purpose of supporting Libertarian candidates for public office, including his own candidacy for Lieutenant Governor. He plans to run again as a Libertarian candidate for statewide public office in future elections.
>
> . . . .
>
> 19. On June 17, 2022, the Republican nominee for Lieutenant Governor, Burt Jones, registered a leadership committee called the "WBJ Leadership Committee, Inc."[9]
>
> 20. On July 8, 2022, the WBJ Leadership Committee filed a campaign contribution disclosure form showing that it has raised at least $60,000 in contributions that exceed the limits with which Graham and his campaign committee must comply.

---

[9] Although not mentioned in the complaint, we note that Charlie Bailey ran in the 2022 election for Lieutenant Governor as the Democratic Party nominee. *November 8, 2022: General/Special Election*, Ga. Sec'y of State, https://perma.cc/NAW5-ETB3 (last updated Nov. 21, 2022). In their supplemental briefing on appeal, Graham and the Libertarian Party acknowledge that Bailey "maintain[s] [an] active leadership committee[.]"

The Libertarian Party did not say what it intends to do in future elections in Georgia.

Graham and the Libertarian Party then sought a preliminary injunction that would either (1) "prohibit the defendants from limiting leadership committees to the nominees of 'political parties,'" or (2) "prohibit the defendants from enforcing the [Leadership Committee Amendment] in its entirety."

On October 6, 2022, the district court found that Graham and the Libertarian Party lacked standing to seek injunctive relief. Although the court found that they alleged an injury in fact (in the form of unequal treatment under the Campaign Finance Act), it concluded that the injury was neither traceable to the defendants nor redressable by the injunctive relief requested. Analyzing traceability, the district court determined that Graham and the Libertarian challenged the wrong statute because Section 21-5-41, not the Leadership Committee Amendment, established the campaign contribution limits. The court also noted that Graham and the Libertarian Party "fail[ed] to allege that [Appellees] have instituted or threatened to institute any action to enforce the [Leadership Committee Amendment] against [them]." Analyzing redressability, the court determined that neither form of injunctive relief sought would redress the injury because Appellees do not determine who forms a leadership committee. Furthermore, the court concluded that the requested relief would require the district court improperly to rewrite the Leadership Committee Amendment to allow all political bodies to form leadership

committees.  And, the district court added, even if Graham and the Libertarian Party could establish traceability and redressability (and thus standing), they "[could not] satisfy all of the prerequisites for the issuance of a preliminary injunction." So the district court denied the motion for preliminary injunction.

This appeal was filed the same day.

Then, on November 8, 2022, Graham lost the election for Lieutenant Governor.[10]

## II.    Standard of Review

"[B]ecause the question of mootness is jurisdictional in nature, it may be raised by the court *sua sponte,* regardless of whether the district court considered it[.]"  *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1331–32 (11th Cir. 2005).

## III.    Discussion

Graham and the Libertarian Party argue that the Leadership Committee Amendment to the Campaign Finance Act, which prohibited Graham but not Jones from forming a leadership committee and accepting campaign contributions that exceeded the statutory limit, violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  But the only allegations in the complaint relate to the 2022 election for

---

[10] *November 8, 2022: General/Special Election*, Ga. Sec'y of State, https://perma.cc/NAW5-ETB3 (last updated Nov. 21, 2022).

Lieutenant Governor, which has passed.  This case is therefore moot.[11]

Article III of the Constitution limits federal courts to deciding "Cases" and "Controversies."  U.S. Const. art. III, § 2.  From the case-or-controversy limitation derives the doctrine of mootness "because an action that is moot cannot be characterized as an active case or controversy."  *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quotations omitted).  Put simply, "we cannot entertain [an] appeal unless an actual dispute continues to exist between the parties."  *Bourgeois v. Peters*, 387 F.3d 1303, 1307–08 (11th Cir. 2004).

"An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  *Wood v. Raffensperger*, 981 F.3d 1307, 1316 (11th Cir. 2020).  "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to afford the plaintiff or appellant meaningful relief, then the case becomes moot and must be dismissed."  *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003) (quotations omitted).

The allegations in Graham and the Libertarian Party's complaint focuses only on Graham's 2022 campaign against Jones.  That campaign ended on November 8, 2022, with the election for

---

[11] On appeal and in the district court below, the parties focused on standing.  We need not reach the issue of standing because we conclude the dispute is moot.

Lieutenant Governor, which Graham lost. Because the issue of the 2022 campaign "no longer presents a live controversy" and we cannot provide meaningful relief as it pertains to the 2022 election, the issue is moot. *Wood*, 981 F.3d at 1316; *De La Teja*, 321 F.3d at 1362.

Graham and the Libertarian Party resist our conclusion on mootness for two reasons. First, they argue that injunctive relief "would still be meaningful to Graham and the [Libertarian] party." Discussing Graham specifically, they argue that injunctive relief "would allow him, like his Democratic counterparts, to raise unlimited funds for certain limited purposes." They point to O.C.G.A. § 21-5-34.2(c), which allows the chair of a leadership committee who "ceases to hold . . . the status as a nominee of a political party"[12] to do one of three things, including "dispose of the leadership committee's assets as provided by Code Section 21-5-33."[13] Section 21-5-33(b)(1)(E) of the Georgia Code, in turn, provides that contributions received by a candidate's campaign committee may be used "[f]or repayment of any prior campaign obligations incurred as a candidate[.]" O.C.G.A. § 21-5-33(b)(1)(E). So Graham and the Libertarian Party seem to be arguing that Graham's ability to form a leadership committee would allow him

---

[12] O.C.G.A. § 21-2-134 mentions death, disqualification, and withdrawal as ways for a person to no longer hold the status as a party's nominee. Graham and the Libertarian Party say that they "assume[] that a person ceases to be a party's nominee . . . the moment that the election becomes final." To evaluate their argument, we take their assumption as correct.

[13] O.C.G.A. § 21-5-33 details the legal uses of candidate contributions.

to use leadership committee funds to pay his campaign debts. But, as already discussed, we cannot provide injunctive relief that reaches back to Graham's funds and campaign debts from the 2022 election, which is over. Whatever debts remain, Graham concedes he is no longer the Libertarian Party's nominee, *see* footnote 12—under the statute, he is no longer entitled to chair a leadership committee. *See* O.C.G.A. § 21-5-34.2(a). So this argument regarding injunctive relief does not save Graham's case from mootness.

Nor would such injunctive relief be meaningful for the Libertarian Party. Graham and the Libertarian Party assert that the Libertarian Party "needs to know *now* whether its candidates for Governor and Lieutenant Governor in 2026 will compete on a level or unlevel playing field" and whether funds can be raised "from large-dollar donors." But even assuming, as they argue, that "the current campaign-finance rules affect candidate recruitment and fundraising plans for future elections," their complaint failed to allege *anything* related to the Libertarian Party's future campaigns. We cannot merely rely, as Graham and the Libertarian Party urge in their briefing, on the fact that the Libertarian Party has run candidates in every election for Governor or Lieutenant Governor since 1990. Without any concrete allegations about the Libertarian Party's intentions for future elections in the complaint itself, the case as presented to us fails to present a "live controversy with respect to which the court can give meaningful relief." *Wood*, 981 F.3d at 1316.

Switching gears, and assuming this case is otherwise moot, Graham and the Libertarian Party argue that this appeal "falls under an exception to the mootness doctrine for cases that are capable of repetition yet evading review." Their argument fails. "Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated *and* evading review, this exception is narrow, and applies only in exceptional situations." *Al Najjar*, 273 F.3d at 1336 (emphasis in original) (quotations and citations omitted). This exception "applies where (1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1229 (11th Cir. 2015) (quotations omitted).

Discussing the first prong of the exception, Graham and the Libertarian Party argue that "there is a reasonable expectation that [they] will be subject to the same action in the future[.]" They argue that Graham alleged his intent to run again for statewide election as a nominee of the Libertarian Party and that there is a "reasonable expectation that the Libertarian Party, which has run a candidate for Governor, Lieutenant Governor, or both, in every election since 1990 will do so again[.]" We have held that, to satisfy the first prong, "there must be some reasonable, non-speculative expectation that the allegedly unlawful action" will recur. *Health Freedom Def. Fund v. President of United States*, 71 F.4th 888, 893 (11th Cir. 2023). "The threat of future injury may not be conjectural or

hypothetical." *Bourgeois*, 387 F.3d at 1309 (quotations omitted). Graham and the Libertarian Party have not satisfied this showing. They do not contend that Graham will run and be nominated as a Libertarian Party candidate for one of the two offices that would allow him to form a leadership committee—Governor or Lieutenant Governor. Rather, their complaint merely says that Graham "plans to run again as a Libertarian candidate for statewide public office in future elections."[14] Thus, "the possibility of a recurrence is purely theoretical," *Wood*, 981 F.3d at 1318, and Graham and the Libertarian party fail to meet the first prong of the mootness exception.

Because Graham and the Libertarian Party fail to meet the first prong of the mootness exception, we need not address whether they meet the second prong. Graham and the Libertarian Party's case does not fall under the mootness exception for cases that are "capable of repetition yet evading review." *Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1229.

## IV.    Conclusion

Because this case became moot on November 8, 2022, we vacate the underlying judgment, dismiss the appeal, and remand

---

[14] Nor does the Libertarian Party's intent to nominate candidates for qualifying offices in the future keep this case alive—the Libertarian Party is not entitled to chair a leadership committee in its own right. Only nominees and office holders may do so. *See* O.C.G.A. § 21-5-34.2(a).

22-13396                Opinion of the Court                17

for the district court to dismiss the case as moot. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).

**VACATED, DISMISSED, and REMANDED.**